UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Inhalation Plastics, Inc.,

      Plaintiff,

                                   Case No. 2:07-cv-116
                                   Judge Smith
      v.                          Magistrate Judge King

Medex Cardio-Pulmonary, Inc.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff/Counter-Defendant Inhalation Plastics, Inc.'s ("Inhalation Plastics" or "IPI") Motion to Dismiss Counts II and III of Defendant/Counter-Plaintiff Medex Cardio-Pulmonary, Inc.'s ("Medex") Amended Counterclaim and Motion to Strike Medex's First and Second Affirmative Defenses (Doc. 121); Counter-Defendant Walter Levine's Motion to Dismiss Count IV of Medex's Amended Counterclaim (Doc. 122); and Counter-Defendant David Levine's Motion to Dismiss Count IV of Medex's Amended Counterclaim (Doc. 137).  These motions are fully briefed and ripe for disposition.  For the reasons that follow, the Court **DENIES** all four motions.

## I.      Background

Inhalation Plastics, a manufacturer and distributer of medical products, was incorporated in the State of Illinois, and had its principal place of business in that state.  Medex, a manufacturer and distributor of medical products, is an Ohio corporation with its principal place of business in the State of California.  In May 2002, Inhalation Plastics entered into a series of agreements with

Medex, including an Asset Purchase Agreement ("the APA") (Doc. 112-1), for the purpose of

arranging Medex's acquisition of Inhalation Plastics and its business operations.  In conjunction

with these agreements, Walter and David Levine ("the Levines")[1], executed a "Guaranty."  The

Guaranty, which will be more thoroughly discussed below, generally provides that the Levines

agreed to indemnify and hold harmless Medex from injury, expense, or loss caused by any

material misrepresentation of Inhalation Plastics or its failure to otherwise properly perform under

the applicable agreements.

Medex subsequently merged with Smiths Medical Holdco Limited ("Smiths Holdco") in

December 2004 and ceased manufacturing and distributing Inhalation Plastics' former product

lines.  Medex assigned and transferred to Smiths Holdco the rights of Inhalation Plastics under the

APA and other agreements.  Inhalation Plastics took the position that this transfer violated anti-

assignment provisions of its agreements with Medex, and it therefore commenced this action

against Medex in February 2007, alleging breach of written and oral contracts.  These claims,

however, are not the subject of this decision.

In November 2010, Medex filed its Second Amended Answer and Affirmative Defenses to

Inhalation Plastics' First Amended Complaint, and its Amended Counterclaims against Inhalation

Plastics and the Levines.  Medex asserts four counterclaims: a breach of contract claim against

Inhalation Plastics (Count I), fraudulent inducement and fraud claims against Inhalation Plastics

(Counts II and III), and a breach of contract claim against Walter and David Levine (Count IV).

Consistent with its fraud claims, Medex's asserts, by its First and Second Affirmative Defenses,

---

[1] Walter Levine was the President of Inhalation Plastics, and David Levine was the Vice
President of Sales and Marketing of Inhalation Plastics as well as its Corporate Secretary.

2

that Inhalation Plastics' claims should be barred because it fraudulently induced Medex to enter the contracts and because these claims are barred to the extent that they arose out of fraud or constructive fraud. Generally, Medex alleges that Inhalation Plastics, by and through its agents, fraudulently induced Medex to enter the agreements effectuating its acquisition of Inhalation Plastics. Medex additionally alleges that Inhalation Plastics, by and through its agents, made material misrepresentations and omissions before, during, and after the acquisition, concerning its assets. The specifics of Medex's fraud claims will be discussed below. Inhalation Plastics moves to dismiss Counts II and III, and it also moves to strike Medex's First and Second Affirmative Defenses. Walter and David Levine separately move to dismiss Count IV. These motions have been fully briefed and are ripe for disposition.

## II. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Medex's fraud claims (Counts II and III) implicate the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

4

Thus, a complaint alleging fraud must state the specific circumstances surrounding the alleged fraud with particularity. *See* Fed. R. Civ. P. 9(b); *Power & Tel. Supply Co. v. Sun Trust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (recognizing that plaintiffs asserting a fraud claim must "at a minimum, allege the time, place, and content of the alleged misrepresentations on which he or she justifiably relied, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud.").

The main purpose of Rule 9(b)'s heightened pleading requirements is to provide defendants with "notice of the specific conduct with which they were charged," so that the defendants can prepare responsive pleadings. *See United States ex rel. Bledsoe v. Comty. Health Sys.*, 501 F.3d 493, 510 (6th Cir. 2007). And Rule 9(b) requires particularity because "the nature of the evidence in cases involving allegations of fraud is often circumstantial, [and] claims of fraud can be fabricated easily." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1101 (6th Cir. 2010) (citing *Disner v. Westinghouse Elec. Corp.*, 726 F.2d 1106, 1110 (6th Cir. 1984)). Thus, fraud claims pose a higher risk that an error will be made in determining whether a defendant has committed it. *Id.* Rule 9(b) does not, however, require a plaintiff to be omniscient. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988). Lastly, although a plaintiff must "allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud[,]" the Sixth Circuit has "also made clear . . . [that] this requirement should be understood in terms of Rule 9(b)'s broad purpose of ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

5

### III.    Discussion

Medex's Amended Counterclaim sets forth four claims:  breach of contract against Inhalation Plastics (Count I), fraudulent inducement and fraud against Inhalation Plastics (Counts II and III), and breach of contract against Walter and David Levine (Count IV).  The Counter-Defendants move to dismiss Counts II, III, and IV, but not Count I.  Thus, this decision does not address Count I of the Amended Counterclaim.  The Court will first address Inhalation Plastics' motion to dismiss Counts II and III, and the corresponding motion to strike.  The Court will then address Walter and David Levine's motions to dismiss Count IV.

#### A.    Medex's Claims of Fraudulent Inducement and Fraud (Counts II and III)

Inhalation Plastics argues that Medex's claims of fraudulent inducement and fraud should be dismissed because Medex has failed to plead the necessary elements of its fraud claims with the particularity that the law requires.  Medex argues that it has pleaded more than sufficient facts in support of its fraudulent inducement and fraud claims to meet the requirements of Rule 9(b).  For the following reasons, the Court concludes that Medex has satisfied the heightened pleading requirements of Rule 9(b).

In Ohio, the elements of fraud are:  (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.  *Burr v. Bd. of Cty. Comm'rs. of Stark Cty*, 491 N.E.2d 1101, paragraph two of syllabus (Ohio 1986).  A claim of fraud in the inducement arises when a party is

6

induced to enter into an agreement through fraud or misrepresentation. *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998). Thus, the elements of fraud and fraud in the inducement are essentially the same. *See, e.g.*, *Stegawski v. Cleveland Anesthesia Group, Inc.*, 523 N.E.2d 902, 908 (Ohio Ct. App. 1987).

Medex alleges that Inhalation Plastics' agents, the Levines, engaged in fraudulent conduct in an effort to induce Medex to acquire Inhalation Plastics. Medex alleges that the Levines made misrepresentations during the acquisition negotiation process. According to Medex, the Levines provided to Medex a catalogue of products that Inhalation Products could produce, information about the machinery and equipment used by Inhalation Products, including the representation that it was in good working repair, information about the manufacturing processes used by Inhalation Plastics and the representation that these processes met or could meet all regulatory standards for the production of medical devices. (Am. Countercl., ¶¶ 12-15). Inhalation Plastics also provided information concerning its debts, and accounting information, including balance sheets, regarding its sales, revenues, profits, and expenses. *Id.* at ¶¶ 16-17. The Levines represented that the accounting information was prepared in accordance with generally accepted accounting principles, and that they fairly represented Inhalation Plastics' income and cash flows. *Id.* at ¶ 17. Medex subsequently learned that this information provided by the Levines was "false, incomplete or misleading." *Id.* at ¶ 19. Medex alleges that the Levines provided this false, incomplete, and misleading information to induce Medex to enter dealings with Inhalation Plastics, and that Medex did in fact agree to acquire Inhalation Plastics on the basis of these and other misrepresentations. *Id.* at ¶¶ 20-21.

Pursuant to the agreements entered between Inhalation Plastics and Medex, Medex

purchased certain assets and leased other assets from Inhalation Plastics.  *Id.* at ¶ 22.  Inhalation

Plastics and the Levines made various representations and warranties to Medex within the

agreements.  Inhalation Plastics "warranted that all of the assets transferred pursuant to the

APA were in good working condition and repair, as required for their use in IPI's business, and

that the assets transferred pursuant to the APA included all the assets used or required to conduct

IPI's business."  *Id.* at ¶ 25.  Prior to the parties entering the APA, Inhalation Plastics provided to

Medex balance sheets of December 31, 1999, December 31, 2000, and December 31, 2001.  *Id.*

at ¶ 27.  The APA provides that "[t]he Inventory set forth on the Balance Sheet dated as at

December 31, 2001 is (i) valued at the actual cost or market, if less, and (ii) consists of items of a

quality and quantity currently useable and salable in the ordinary course of the Business without

markdown or discount."  (Doc. 112-1, p. 11).

> The Amended Counterclaim details Medex's discovery of the alleged misrepresentations:
>
> After acquiring IPI's business, Medex CP discovered that many of the
> representations and warranties of IPI – which were personally guarantied by both
> Walter Levine and David Levine pursuant to the Levine Guaranty – were false, and
> that facts material to the Agreements had been concealed by IPI.
>
> Specifically, contrary to IPI's and the Levines' representations and warranties,
> many of the assets transferred to Medex CP pursuant to the APA were in poor
> operating condition and repair, and would require significant time and effort by
> Medex CP to be brought to a proper operating condition and repair, as
> represented.
>
> After the Agreements were executed, Medex CP also discovered that IPI's
> equipment was not in a condition that would satisfy regulatory requirements, it
> was not safe, and some equipment was even held together with duct tape.
>
> After testing and inspecting the equipment, Medex CP discovered that of the
> hundreds of products in the catalogue provided by IPI - which IPI claimed it could
> produce for sale - only a few dozen or so could actually be produced and sold in
> the marketplace.

Medex CP also learned that the manufacturing processes used by IPI did not meet industry or regulatory standards, including that IPI employees would try to run a machine on the same product over and over again, despite limits on such failures as required by industry and regulatory standards.

IPI refused to discard bad products or materials, though Medex CP informed IPI that they could not be used. Specifically, IPI insisted on using "regrind" plastic for the production of certain products, though such "regrind" was not up to industry or regulatory standards.

The Balance Sheets and financial information provided by IPI prior to the execution of the Agreements were also incomplete, incorrect, and did not follow generally accepted accounting principles. After the Agreements were executed, Medex CP learned that in some instances the financial information had not been inspected or certified by an accounting professional, as was justifiably expected by Medex CP.

Medex CP learned that IPI's actual revenue streams were much lower than represented and warranted by IPI, and certain debts were higher than represented.

Medex CP learned that IPI did not include in its accounting of IPI's profitability or performance the amount of unusable products made by its machines, such that IPI's proffered accounting to Medex CP for the profitability of its machines was much higher than it would have been had IPI properly accounted for the number of unusable products its machines manufactured.

IPI, through David Levine, provided to Medex CP an accounting of IPI's "usable" products, including valuations of Finished Goods, Raw Materials, and "WIP." IPI also provided to Medex CP valuations of the machinery and equipment. After Medex CP acquired IPI, over the course of time, Medex CP discovered that IPI had vastly over-valued its "usable" products, as well as the value of its machinery and equipment.

After acquiring IPI's business, Medex CP also discovered that a significant amount of the inventory sold to Medex CP pursuant to the APA was unusable and could not be sold in the ordinary course of business.

(Am. Countercl., ¶¶ 38-48). Medex alleges that Inhalation Plastics and the Levines continued to make misrepresentations after the agreements between the companies were entered, including continuing to "insist that its machinery and equipment were in proper working condition" and

9

"that the poor products produced by its machinery and equipment were in a condition to be sold as medical devices on the marketplace, though they did not meet regulatory or market standards. IPI continued to represent this despite knowing it to be false." *Id.* at ¶¶ 50-51.

Lastly, the Amended Counterclaim outlines the consequences of Inhalation Plastics' alleged misrepresentations, including the significant expenditures Medex needed to make to bring the "assets to good operating condition and repair," and to "bring the machinery and equipment into a condition where they could produce products that were usable or saleable in the market." *Id.* at ¶¶ 58-59.  Also, as a result of the alleged misrepresentations, Medex "misunderstood the true value of the IPI business." *Id.* at ¶ 61.

In view of these allegations, and contrary to Inhalation Plastics' assertions in support of its Motion to Dismiss, the Court finds that Medex has alleged, with sufficient particularity, the circumstances of Inhalation Plastics' alleged fraudulent conduct.  Medex has, in sufficient detail, outlined the fraudulent scheme allegedly conducted by the Levines in their effort to facilitate Medex's acquisition of Inhalation Plastics.  While the fraud claims are against Inhalation Plastics, the Amended Counterclaim identifies the Levines as the persons who made the misrepresentations on behalf of the company.  Medex alleges that the Levines made their misrepresentations during the negotiation phase, in the agreements themselves (which were attached to the Amended Counterclaim), and even after the execution of the agreements.  The Amended Counterclaim quotes specific language of the agreements that were allegedly fraudulent.  By its allegations quoted extensively above, Medex also identifies the substance of statements made by the Levines during the negotiation process between the two companies that were allegedly fraudulent.  And Medex explains the reasons why these statements were false. Summarily stated, Medex alleges

10

that assets it purchased were in poor working condition, contrary to the Levines representation that all of the assets were in good working condition; that the manufacturing processes used by Inhalation Plastics did not meet industry and regulatory standards as was represented; and that the financial information provided to Medex, concerning such matters as Inhalation Plastics' revenue stream and debt, were inaccurate, incomplete, and did not comply with generally accepted accounting principles, all contrary to what had been represented by the Levines on behalf of Inhalation Plastics.

Although Medex could have provided more detail in its pleading (which would seemingly almost always be the case), the Court resolves that the challenged counterclaims pleaded in this case meet the requirements of Rule 9(b) and present sufficient particularity to enable Inhalation Plastics "to prepare an informed pleading responsive to the specific allegations of fraud." *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 645 (6th Cir. 2003). That is, Medex has detailed the alleged fraudulent conduct with enough specificity for Inhalation Plastics to prepare its defense. To find otherwise would "encourage a disingenuous game of 'gotcha' litigation." *See Jennings v. Bodrick*, No. 2:09-cv-208, 2009 WL 1607711 (S.D. Ohio June 9, 2009) (Frost, J.). Accordingly, Inhalation Plastics' Motion to Dismiss Counts II and III is without merit and will be denied.

In connection with its Motion to Dismiss Counts II and III, Inhalation Plastics moves, pursuant to Federal Rule of Civil Procedure 12(f), to strike Medex's First and Second Affirmative Defenses. Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Medex's First and Second Affirmative Defenses assert that Inhalation Plastics' claims should be barred because it

11

fraudulently induced Medex to enter the contracts and because these claims are barred to the extent that they arose out of fraud or constructive fraud. Inhalation Plastics argues that Medex's First and Second Affirmative Defenses should be stricken for the same reasons Medex's fraud claims should be dismissed. Because the Court rejects Inhalation Plastics' argument that Medex has not pleaded it claims of fraud with particularity, Inhalation Plastics' Motion to Strike will be denied.

**B.     Medex's Claim of Breach of Contract Against Walter and David Levine (Count IV)**

Walter and David Levine separately move to dismiss Count IV of Medex's Amended Counterclaim. The motions will be addressed together, however, as the allegations against these Counter-Defendants are the same, and the parties present the same arguments in relation to these motions. (*See* Docs. 137 and 138, incorporating by reference the arguments made in the previously filed motion to dismiss briefing).

By Count IV, Medex alleges that the Levines have breached the express terms of the Guaranty, which provides as follows:

> **FOR VALUABLE CONSIDERATION RECEIVED**, the undersigned Walter Levine and David Levine ("Guarantors") jointly and severally hereby unconditionally, and with waiver of notice, presentment, or demand, guarantee to [Medex], an Ohio corporation . . . the truth, accuracy and completeness of each of the representations and warranties of Seller, Inhalation Plastics, Inc., an Illinois corporation ("IPI"), made and given pursuant to that certain Asset Purchase Agreement of even date herewith between IPI and [Medex] and further guarantee the performance of all covenants of IPI made thereunder to be performed in connection with the transactions contemplated thereby.

> Guarantors further guarantee the truth, accuracy and completeness of the representations and warranties of Landlord under that certain Real Property Lease Agreement of even date herewith between the Merrimac Trust as Landlord and [Medex] as Tenant for the real property commonly known as 3217 North

Kilpatrick Avenue, Chicago, Illinois and the performance of all Landlord's covenants thereunder.

In conjunction with the foregoing guarantees, Guarantors hereby agree to indemnify and hold harmless [Medex] . . . from all injury, expense or loss arising directly or indirectly from or in consequence of the material untruth, inaccuracy or incompleteness, of any representation or warranty or the breach of any such covenant as set forth in said Asset Purchase Agreement, Real Property Lease Agreement or other document executed or to be executed and delivered in connection therewith.

(Doc. 112-3). According to Medex, the Levines breached the express terms of the Guaranty by:

(i) guarantying the truth, accuracy and completeness of the representations and warranties made by IPI to [Medex] pursuant to the APA, when said representations and warranties were untruthful, inaccurate and/or incomplete; (ii) guarantying the performance of all covenants made by IPI in relation to [Medex's] acquisition of IPI's business, when all covenants were not performed; and (iii) failing to indemnify and hold harmless [Medex] . . . for all injury expense or loss arising directly or indirectly from the material untruth, inaccuracy or incompleteness of any representation or warrant or the breach of any covenant set forth in any of the documents executed pursuant to [Medex's] acquisition of IPI's business.

(Am. Countercl., ¶ 113).

The Levines argue that the breach of contract action against them is premature, or not ripe, because they cannot be liable on the Guaranty until a debt has been established, which the guarantors are obligated to pay. The Levines argue that the claim against them cannot proceed until a "debt has been found to be owed[.]" (Doc. 122, p. 5). Although the Levines move for dismissal pursuant to Rule 12(b)(6), which permits dismissal of a lawsuit for failure to state a claim upon which relief can be granted, they actually move for dismissal under Rule 12(b)(1), for lack of subject matter jurisdiction. *See Hockman v. Schuler*, No. 07-cv-14268 (E.D. Mich. June 5, 2009) (noting that a Rule 12(b)(6) motion to dismiss based on lack of ripeness is more appropriately considered as a Rule 12(b)(1) motion to dismiss for lack of subject matter

jurisdiction).  Medex argues that its claim against the Levines is ripe.

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move for dismissal when the court lacks subject matter jurisdiction.  Pursuant to Article III of the United States Constitution, federal jurisdiction is limited to "cases" and "controversies," and standing is "an essential and unchanging part of" this requirement.  U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  If the plaintiff lacks standing, the federal court lacks jurisdiction.  Thus, standing is "the threshold question in every federal case."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Id*.

Standing under Article III has three elements.  "First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted).  Second, the injury must be "fairly traceable to the challenged action of the defendant."  *Id.* (Internal alterations omitted).  Third, it must be likely that the injury will be "redressed by a favorable decision."  *Id.* at 561.  The "fairly traceable" requirement "examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas" the "redressability" requirement "examines the causal connection between the alleged injury and the judicial relief requested."  *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984).

Here, the Levines argue that Medex has not alleged an injury in fact because they have not, and cannot, breach an obligation to Medex that has not arisen.  The Levines' position is reflected by how they frame the issue: "how can [the Levines] breach an obligation to make a

payment to Medex when even Medex does not know what it claims Walter is obligated to pay?"
(Doc. 128, p. 3).  As further stated by the Levines, "Medex is suing [the Levines] for breaching an
obligation that may never arise."  *Id.*  The Levines reason as follows:  "until Medex establishes
that [Inhalation Plastics] owes it an obligation or debt based upon an act or omission creating an
obligation on the part of [the Levines] to indemnify it and hold it harmless, and until [Inhalation
Plastics] has defaulted on that obligation or debt, [the Levines] cannot be in breach of the
Guaranty, and cannot be liable to Medex."  (Doc. 128, p. 4).

　　　The Levines erroneously reason that their obligation under the Guaranty is only implicated
upon the establishment of a "debt" in the form of a judgment in favor of Medex and against
Inhalation Plastics.  Under the Guaranty, however, the Levines "unconditionally, and with waiver
of notice, presentment, or demand, guarantee to [Medex] the truth, accuracy and completeness of
each of the representations and warranties of [Inhalation Plastics] made and given pursuant to that
certain Asset Purchase Agreement . . . between [Inhalation Plastics] and [Medex] and further
guarantee the performance of all covenants of [Inhalation Plastics] made thereunder to be
performed in connection with the transactions contemplated thereby."  (Doc. 112-3).  "In
conjunction with" this guarantee, the Levines agreed "to indemnify and hold harmless [Medex] . .
. from all injury, expense or loss arising directly or indirectly from or in consequence of the
material untruth, inaccuracy or incompleteness, or any representation or warranty or the breach of
any of such covenant as set forth in said Asset Purchase Agreement[.]"  *Id.*

　　　A guarantee is a "promise to answer for the payment of some debt, or the performance of
some duty, in case of the failure of another who is liable in the first instance."  Black's Law
Dictionary (9th ed. 2009).  As pertinent here, the party executing the guarantee (also spelled

15

"guaranty") is the "guarantor," the one to whom the guarantee is given is the "guarantee," and the party whose conduct is guaranteed is the "principal."  *See* Corpus Juris Secundum, Guaranty, § 1 (2011).  In this case, the Levines promised to answer for the failure of Inhalation Plastics to perform its contractual duties under the Asset Purchase Agreement, and for any material untruthfulness, inaccuracy, or incompleteness of representations and warranties of Inhalation Plastics made and given pursuant to the agreement.  And if Inhalation Plastics failed to perform as required, the Levines agreed to indemnify Medex from all "injury, expense or loss arising directly or indirectly" therefrom.  Medex alleges that Inhalation Plastics failed to perform as required under its agreement with Medex.  Consequently, in view of the Guaranty, Medex additionally alleges that the Levines, the guarantors, have not answered for the failure of Inhalation Plastics, the principal, to perform under the pertinent agreement.

The Guaranty signed by the Levines is expressly "unconditional" and waives all "notice, presentment, or demand."  (Doc. 112-3).  When there is such an unconditional guaranty, the party to whom the guaranty is given (the creditor or guarantee) may immediately file suit upon the failure of the principal to perform, because that is when the cause of action ripens.  *See Barclays American/Commercial Inc. v. ROYP Marketing Group, Inc.*, 573 N.E.2d 1115, 1119 (Ohio Ct. App. 1988); *Columbus Countrywide Dev. Corp. v. Junior Village of Dublin, Inc.*, No. 03AP-73, 2003 WL 22332001 (Ohio Ct. App. Oct. 14, 2003).  Medex alleges that Inhalation Plastics failed to perform its obligations referenced in the Guaranty.  Based on this allegation, Medex's claim against the guarantors is ripe.  Thus, it was unnecessary, contrary to what is asserted by the Levines, for Medex to obtain a judgment against Inhalation Plastics before initiating its action against the Levines.  Because Medex has alleged an injury in fact against the Levines and its claim

16

against the Levines is ripe, the Levines' Motions to Dismiss are unavailing and will be denied.

The Court notes that the Levines, in a footnote contained in their memoranda in support of their motions to dismiss, argue that Medex improperly seeks to recover punitive damages and attorneys' fees from them.  Medex argues that the language of the Guaranty is broad and includes an obligation to indemnify Medex for its attorneys' fees, and argues that if Inhalation Plastics is liable to it for punitive damages, then the Levines, as the guarantors, will also be responsible to pay such damages.  The Levines further develop the issue in their reply briefs.  The Court agrees with the Levines insofar as they argue that they cannot be liable for punitive damages.  Although Medex alleges fraud against Inhalation Plastics, its claim against the Levines is for breach of contract.  Punitive damages are not available in a breach of contract action.  *Ketcham v. Miller*, 136 N.E. 145 (Ohio 1922), paragraph two of the syllabus.  Furthermore, even if Inhalation Plastics is found to be liable for punitive damages as a result of fraudulent conduct, the Levines will not be personally responsible to pay such damages.  The Guaranty provides that the Levines agreed to indemnify and hold harmless Medex from all "injury, expense or loss" resulting from Inhalation Plastics' failure to perform.  Punitive damages are not awarded to compensate a party for actual injury or loss.  Instead, they are awarded to punish and deter certain conduct. *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 343 (Ohio 1994) ("The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct.").  Therefore, even though the Levines agreed to indemnify Medex for certain compensatory losses, they did not agree to be personally responsible for any punitive damages awarded based on the conduct of Inhalation Plastics.

Whether the Levines may be liable for attorneys' fees is not as straightforward.  The

nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used.  *See Cleveland Window Glass & Door Co. v. National Surety Co.*, 161 N.E. 280 (Ohio 1928).  And all words used must be taken in their ordinary and popular sense.  *Glaspell v. Ohio Edison Co.*, 505 N.E.2d 264, 267 (Ohio 1987).  As to the recovery of attorneys' fees, Ohio adheres to the "American rule":  the prevailing party in a civil case may not recover attorneys' fees as a part of the costs of litigation.  *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009).  But there are exceptions to this rule.  Attorneys' fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorneys' fees, or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant.  *Id.*

Medex argues that, based on the pertinent language of the Guaranty, the Levines "agreed to pay the attorneys' fees that [Medex] incurs in claims involving [Inhalation Plastics]."  (Doc. 125, p. 5).  The Levines argue that the language of the Guaranty does not provide that they will be responsible for attorneys' fees.  Certainly, the language of the Guaranty does not expressly state that the Levines will pay "attorneys' fees" incurred by Medex.  As discussed above, however, the Levines agreed "to indemnify and hold harmless" Medex for "all injury, expense or loss" resulting from Inhalation Plastics' failure to perform as required.  The payment of attorneys' fees fits within the broad category of "all injury, expense or loss" that the Levines agreed to indemnify.  *See Murray Ohio Mfg. Co. v. Shimano American Corp.*, No. 90-5142, 1991 WL 209476 (6th Cir. Oct. 17, 1991) (unpublished).  Furthermore, the Supreme Court of Ohio has expressly stated that "where a party agrees to hold another harmless, the party seeking to enforce the terms of the indemnity agreement may be made whole by proceeding against the party who

18

failed to abide by the terms of the agreement, and such recovery may include attorney fees."

*Worth v. Aetna Cas. & Surety Co.*, 513 N.E.2d 253, 257 (Ohio 1987).  Consequently, the Court

finds the Levines' argument that, even if Medex prevails, it is precluded from seeking attorneys'

fees, to be unpersuasive.

**IV.    Conclusion**

For the foregoing reasons, the Court **DENIES** Inhalation Plastics' Motion to Dismiss

(Doc. 121), **DENIES** Inhalation Plastics' Motion to Strike (Doc. 121), **DENIES** Walter Levine's

Motion to Dismiss (Doc. 122), and **DENIES** David Levine's Motion to Dismiss (Doc. 137).

The Clerk shall remove Documents 121, 122, and 137 from the Court's pending motions

list.

**IT IS SO ORDERED.**

*s/ George C. Smith*_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

19