UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **INHALATION PLASTICS, INC.** | CIVIL ACTION NO. 2:07CV116 |
| Plaintiff, | Judge Smith |
| v. | Magistrate Judge King |
| **MEDEX CARDIO-PULMONARY, INC.** | |
| Defendants. | |

### RESPONSE OF IPI AND WALTER LEVINE TO MEDEX'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER

Medex has moved to quash subpoenas served for the depositions of Adam Jones and Felicia Jones, Divisional General Counsel for Smiths Medical and a paralegal for Smiths Medical, respectively. The motion is not well-founded. The witnesses possess relevant and material non-privileged evidence. Medex's Motion to Quash and for a Protective Order, therefore, should be denied.

**1.    Medex's facial attack on the subpoenas has been mooted.**

Medex made a challenge to the subpoenas its counsel accepted on behalf of Adam Jones and Felicia Jones, claiming that the subpoenas are facially defective because the second page of the form subpoena document was not provided to counsel for Medex. The subpoenas have been re-served on counsel for Medex, and the second page of the form has been provided with the re-served subpoenas. This should moot the objection **(See Exhibit 1, Declaration of Richard H. Lehman)**.

**2.     IPI rejected Medex's alternatives to depositions; it should not be forced to elicit testimony by the method Medex chooses.**

In the Motion, counsel for Medex, who has made clear throughout the discovery process in this lawsuit that he represents both Medex and Smiths Medical, argues that it is somehow unfair for a lawyer and a paralegal to sit for a deposition, even if they are important witnesses and even if they have valuable non-privileged evidence. Rather, he suggests, IPI should be relegated to obtaining evidence from these witnesses by methods designed to give these sophisticated witnesses, who will converse with counsel, advance notice of the questions they will be called upon to answer, all sorts of time to prepare answers with the assistance and review of counsel for Medex, and all the while being able to shield that process from IPI behind a cloak of privilege. And IPI would be denied the opportunity to assess the credibility of these witnesses (as would the Court) and would not be able to ask meaningful follow-up questions. Certainly Medex's counsel would not agree to that process for the depositions of Walter Levine and David Levine.

Counsel for Medex seems to argue that the time of a lawyer and a paralegal is just more valuable than that of every other witness. Heads of large corporations have sat for depositions, as has at least one sitting United States President. Mr. Jones and Ms. Jones can sit for depositions as well. They were intimately involved in events important to the issues in this case. The answers they give to questions should be their answers, not those of their counsel, and they should answer as questions are posed, not after having days to figure out how best to phrase a response to a question to minimize the impact the answer might have on the case. Prepared statements are never quite as sincere as those made without delay and planning.

While counsel for Medex and Smiths proclaims that he has asked several times

whether IPI would submit to his proffered alternatives to depositions without a response from counsel for IPI, the fact of the matter is that counsel for IPI immediately advised counsel for Medex and Smiths that his proposals were not acceptable to IPI (**Exhibit 1**). Counsel for Medex and Smiths just refuses to take no for an answer.

3. **IPI does not intend to annoy, harass, embarrass or oppress Adam Jones or Felicia Jones; they are material witnesses.**

Medex argues that IPI seeks the depositions of Adam and Felicia Jones in order to annoy them and to harass them. Medex cites cases stating the obvious: that a court can control discovery and prevent discovery intended to annoy, embarrass, harass or oppress. Medex claims that is happening here and says that the proof of this is in the fact that counsel for IPI has stated that he also might seek the deposition of a lawyer from the Morgan Lewis & Bockius law firm, which is the same firm representing Medex (and Smiths) in this lawsuit. IPI has no intention of taking the deposition of any of the litigation counsel in this lawsuit and Medex knows this. Counsel for IPI was speaking of the Morgan Lewis & Bockius lawyer who negotiated and drafted the contracts through which Smiths Medical acquired the business of Medex, and along with it the business of IPI. The transfer of the IPI business from Medex to anyone else was contractually prohibited, absent a signed consent from IPI. Through very creative use of an ellipsis, Medex tries to mislead the Court into believing that IPI intended to seek the deposition of Medex's litigation counsel. Here is how Medex partially quoted counsel for IPI:

> I do no [sic] see the problem. ***In fact, there may be a need for Morgan Lewis lawyers involved . . . to appear as witnesses.*** (citing an August 3, 2011 email from counsel for IPI to counsel for Medex)

Fair point, if the quotation at page 5 of Medex Motion was complete and not misleading. But the use of the ellipsis masks what counsel for IPI really said.

3

> I do no [sic] see the problem.  In fact there may be a need for Morgan Lewis lawyers **involved *in the transactional matters underlying this litigation*** to appear as witnesses.

IPI has never sought the depositions of litigation counsel for Medex. Smiths Medical, which acquired Medex and now stands in its shoes, hired the same law firm to represent Medex in this litigation as Smiths used for the transactional matters underlying this litigation. The transactional lawyer is the one that might need to give testimony if other witnesses (such as Adam Jones) are unable to speak to the topics important to this litigation.

In this litigation, Medex argues that it did not breach its non-assignment/non-transfer contract obligations to IPI, and to support this, Medex's counsel continually claims that Medex remains separate from Smiths, that it continues to operate as a separate business from Smiths, that Medex, not Smiths controls and operates what was the IPI business, and that the proof of all of this, at least in part, is in the Smiths/Medex transactional documents (**Exhibit 1**). Smiths and Medex try to hide behind their contract, all the while objecting to witnesses being asked to discuss the contract that Smiths and Medex use as their shield. IPI is aware of no provisions within the Smiths/Medex transactional documents evidencing Medex's continuing ownership, control or operation of its own business, much less the IPI business it was prohibited from transferring to Smiths. It is believed that Adam Jones and Felicia Jones (both from Smiths) are familiar with the transactional documents, know factually the relationships between Medex and Smiths at various relevant times, know the role Smiths plays and has played in what was the IPI business, and understand how the transactional documents relate to Smiths' takeover of the Medex business, and with it the former IPI business.

4

Various provisions of the written contract between Smiths and Medex also have relevance to Medex's counterclaims against IPI and Walter and David Levine. Smiths performed due diligence in connection with its acquisition of Medex. Medex made various representations and warranties regarding its business, IPI's business, and the performance of IPI's contracts. Some of those representations and warranties are relevant and material to Medex's counterclaims.

Adam Jones and Felicia Jones also possess information regarding Medex's obligations to IPI (obligations Smiths has stated it has assumed toward IPI). They know factually whether payments were to come due to IPI (regardless of the amount of those payments), and know whether appropriate steps were even taken to determine whether payments were or would become due IPI, based upon documents one witness (Vinc Ellerbrock) has already testified he provided to Adam Jones **(Exhibit 1)**. Adam Jones and Felicia Jones both know factually how legacy IPI products were labeled once Smiths acquired Medex, and why they were labeled in a particular way, who made the decisions regarding the labeling, how facility registrations and device listings were reported to FDA and to foreign authorities, including how the former IPI facility and the legacy IPI medical devices were reported to authorities. All of this is relevant and material to demonstrate that Smiths received from Medex the IPI business that Medex was not permitted to transfer without IPI's written consent, but which Medex transferred to Smiths without consent. The very fact that Smiths was the decision-maker with respect to matters involving the former IPI business is significant. This is just a part of what Adam Jones and Felicia Jones know.

All of this will help demonstrate that Medex breached its contract with IPI.

Among the relief IPI is contractually entitled to in the event of a breach is the return to it of the purchased assets and leased machinery and equipment. IPI has demanded the return of the assets, machinery and equipment, and has sought the return of the assets, machinery and equipment in its prayer for relief in its complaint filed in this case. Adam Jones has knowledge of the IPI assets, machinery and equipment and the use currently being made of the assets, machinery and equipment in the Smiths Medical business.

Furthermore, Adam Jones placed himself squarely in the middle of this dispute long before suit was even filed. Before suit, he did not take the position that he was too important to be involved in the dispute. Adam Jones negotiated partial settlements of specific issues that existed between IPI and Medex directly with counsel for IPI before suit was filed, and he did this on behalf of Smiths Medical, despite the fact that IPI's agreements and disputes were not with Smiths Medical, but with Medex Cardio-Pulmonary **(Exhibit 1)**. Why? Whatever the answer, it shows that when Smiths Medical acquired the Medex companies, it acquired the Medex business, including the IPI segment of that business. Adam Jones and Felicia Jones possess material evidence that will tend to prove the breach element of IPI's breach of contract case.

Contrary to what Medex now says, counsel for IPI has not left counsel for Medex in the dark as to why these depositions are needed. IPI disclosed Adam Jones in its initial Rule 26(a)(1) Disclosures years ago **(Exhibit 1)**.  And many reasons for taking these depositions are set forth in the August 3, 2011 email from IPI's counsel to Medex's counsel, which Medex has attached to its Motion as Exhibit C. Counsel for IPI need not reveal to counsel for Medex further detail as to why clearly relevant depositions will be taken any more than counsel for Medex should have to reveal in advance of the

depositions of Walter and David Levine what questions they will ask of those witnesses. Such information is attorney work product and is protected from disclosure. To the extent this Court believes it needs further information to evaluate why these depositions should proceed, IPI will happily disclose that information, *in camera,* to the Court.

**4.      IPI does not seek to infringe upon legitimately privileged matters.**

Medex argues that IPI and Walter Levine are simply trying to infringe upon its privileged communications and for this reason, they suggest, IPI and Walter Levine seek the depositions of Adam Jones and Felicia Jones. As demonstrated above, that is not true. There are numerous reasons that IPI and Walter Levine seek these depositions, many of which do not relate to any particular documents. While IPI and Walter Levine will briefly address the claim that a privilege exists with regard to certain documents that Medex/Smiths produced, the issue here is really one of the scope of the depositions, rather than whether the depositions should proceed, which clearly they should.

While there are many documents that Medex has produced in this case that counsel for IPI and Walter Levine will want to discuss with these witnesses, Medex has not demonstrated that any privileged communications took place, or that a privilege attaches to all or even to any of the documents that IPI and Walter Levine would discuss with the witnesses. While some of documents bear the names of these witnesses, that is wholly insufficient to call a claim of privilege into play. Nonetheless, counsel for IPI and Walter Levine anticipate that counsel for Medex and for Smiths will, in the absence of an order from this Court, prohibit Adam Jones and Felicia Jones from answering questions about those documents, or even the subjects discussed in the documents, as he did at the deposition of Barbara Law, another witness who was deposed a month ago.

Many of the documents that counsel for IPI and Walter Levine would discuss with these witnesses seem to contain what can only be described as factual information and business, not legal, discussions. Factual information and business discussions are not privileged. *See e.g. Hilton-Rorar v. State And Federal Communications Inc.,* 2010 WL 1486916 (N.D. Ohio 2010) *6-7; *Cooey v. Strickland*, 269 F.R.D. 643, 650 S.D. Ohio 2010) (observing that when an attorney is acting in the capacity of a business advisor, rather than providing legal advice, the communication is not privileged).  Some of the documents IPI would discuss with these witnesses also reflect communications with personnel who may not have been within the decision making group at Medex/Smiths, but who merely were receiving business directives.

The fact that an in-house lawyer or a paralegal has his or her name on a document does not shield the document from discovery, or the witness from testifying about the document or the underlying facts contained in the document.  As this Court has observed, the attorney client privilege, because it may serve to frustrate the fact-finding process, should be narrowly construed. *Guy v. United Healthcare Corp.,* 154 F.R.D. 172, 177 (S.D. Ohio 1993).  The existence of a privilege must be established by the party asserting it, and applies only where legal advice is being given or something is being disclosed in confidence to an attorney in order to obtain legal advice. *Id*. at 180.  Records (like Board meeting minutes) containing business information and discussions about business issues, rather than legal advice, are not privileged. *Id*. at 178.

Medex/Smiths produced records in this case that contain the names of Adam Jones and Felicia Jones, which now apparently concern Medex/Smiths. But Medex/Smiths produced those records without even so much as having their counsel

8

review the records being produced **(Exhibit 1),** and without designating a single page of the records now at issue "confidential" under a protective order put in place by the parties and the Court **(Exhibit 1)**.

If, and to the extent, some of the records bearing the names of one or both of Adam Jones and Felicia Jones were ever privileged, for the reasons discussed in "Plaintiff's Motion for Determination that Documents Produced by Medex are not Subject to Privilege, " which is being filed contemporaneously herewith, Medex/Smiths has waived any claim of privilege.

**5.**     **Conclusion.**

For all of the reasons discussed above, the depositions of Adam Jones and Felicia Jones should proceed.  Both witnesses are proper witnesses who have information relevant and material to the issues in this lawsuit. While the issue of attorney-client privilege and waiver will by necessity be the subject of IPI's separate motion, that motion addresses the proper scope of the depositions, not whether the depositions are permissible. As discussed above, there are numerous reasons for the depositions of Adam Jones and Felicia Jones to go forward that do not conceivably relate to any privileged communications.

Respectfully submitted,

       /s/ *Peter W. Hahn*       
Peter W. Hahn (0070202) (Trial Attorney)
DINSMORE & SHOHL, LLP
191 West Nationwide Boulevard, Suite 300
Columbus, Ohio  43215
Telephone:    (614) 221-8448
Fax:   (614) 221-8590
E-mail:peter.hahn@dinslaw.com
*Counsel for Plaintiff*

Of Counsel:
Richard H. Lehman (Illinois No. 6204921)
Matthew D. Tanner (Illinois No. 6202508)
TANNER & LEHMAN  LLC
53 West Jackson Boulevard
Suite 400
Chicago, Illinois  60604
Telephone: (312) 588-1970
Facsimile:  (312) 294-6499
E-Mail:  (rlehman@tannerlehman.com)

*Co-Counsel for Plaintiff (admitted pro hac vice)*

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on the 11th day of October, 2011.

                                       /s/ *Peter W. Hahn*
                                       Peter W. Hahn