IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


INHALATION PLASTICS, INC.,

      Plaintiff,

     vs.                  Civil Action 2:07-CV-116
                             Judge Smith
                             Magistrate Judge King

MEDEX CARDIO-PULMONARY, INC.,

      Defendant.


<u>OPINION AND ORDER</u>

This matter is before the Court on *Plaintiff's Motion for Determination that Documents Produced by Medex are Not Subject to Privilege* ("*Plaintiff's Motion*"), Doc. No. 163.  For the reasons that follow, *Plaintiff's Motion* is **GRANTED**.

**I.    BACKGROUND**

This motion concerns documents produced by defendant Medex Cardio-Pulmonary, Inc., ("Medex") to plaintiff Inhalation Plastics, Inc., ("IPI") on either May 28, 2011 or May 30, 2011.[1]  The May 30 production was made in hard-copy format and contained approximately 7,500 pages, none of which was stamped "confidential" as provided by the *Stipulated Protective Order*, Doc. No. 75., at 3.  Of the 7,500 pages produced in the May 30 production, 347 are emails with one or more of the following people included as senders or recipients: Adam

---

[1]The parties discuss the same document production, but Medex believes that the production occurred on May 28, 2011; *Defendant Medex Cardio-Pulmonary, Inc.'s Memorandum in Opposition to Plaintiff's Motion for Determination That Documents Produced by Medex are Not Subject to Privilege* ("*Medex's Memorandum in Opposition*"), Doc. No. 167, at 8; and IPI believes that the production occurred on May 30, 2011.  *Plaintiff's Motion*, at 2.  The Court will refer to the production as the "May 30 production."

1

Jones, Smith Medical ASD's Division General Counsel; Yvonne Nichols, Smith Medical ASD's in-house attorney; and Felicia Jones, Smith Medical ASD's paralegal. *Plaintiff's Motion*, Exhibit 1 at ¶ 3; *Medex's Memorandum in Opposition*, at 1. Medex asserts that the documents are protected by the attorney client privilege and characterizes those documents as inadvertently produced; IPI asserts that the documents are not privileged and that any privilege has been waived.

After reviewing the May 30 production, IPI sought to depose Adam Jones and Felicia Jones based on documents obtained in the production. *Plaintiff's Motion*, at 3. Upon learning of this, Medex asserted that emails with Adam Jones, Yvonne Nichols, or Felicia Jones listed as senders or recipients were privileged and had been inadvertently produced. *Id.*, Exhibit 1 at ¶ 6; *Medex's Memorandum in Opposition*, at 1-2. Medex requested that IPI provide the Bates numbers for the documents containing the names of the three Smiths Medical ASD employees listed above, but IPI refused and noted that it should not have to disclose in advance documents that it intended to use at a deposition. *Plaintiff's Motion*, Exhibit 1 at ¶ 8, 9, 11, Exhibit 2. At the subsequent deposition of Barbara Law, IPI sought to show Ms. Law fourteen documents from the May 30 production. *Id.*, Exhibit 1 at ¶ 10. Medex again characterized the documents as inadvertently produced, privileged communications and, sequestering the documents during the deposition, sought to claw them back. *Id.*; *Medex's Memorandum in Opposition*, at 4-5, Exhibit B at 123.

More than 85,000 pages of documents have been produced in this case. *See Plaintiff's Motion*, Exhibit 2. IPI has submitted all 347 pages at issue from the May 30 production to the Court, under seal,

2

for the Court's *in camera* inspection.

## II.   DISCUSSION

### A.   Attorney Client Privilege

Medex asserts that all 347 pages at issue from the May 30 production are protected by the attorney client privilege.  This is a diversity action; therefore, it is Ohio's law of privilege that applies.  Fed. R. Evid. 501.  *See Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990).  There is, however, no material difference between Ohio's attorney client privilege and the federal common law privilege.  *See* Ohio R.C. § 2317.02(A) (indicating that an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client"); *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 177 n.3 (S.D. Ohio 1993).

The purpose of the attorney client privilege is to encourage clients to communicate freely with their attorneys.  *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  However, because the attorney client privilege operates to reduce the amount of information discoverable, it is narrowly construed.  *Id.*  The party invoking the protection of the attorney client privilege bears the burden of establishing the following:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications  relating to that purpose, (4) made in confidence  (5)  by  the  client,  (6)  are at his instance permanently protected (7) from disclosure by himself or by his legal advisor, (8) except the protection be waived.

*Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992) (quoting *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985)).

Medex has not identified to the Court any particular documents

3

that it believes are privileged, nor has it provided IPI with a privilege log.  Medex cites to *Brown v. Voorhies*, No. 2:07-cv-0013, 2010 WL 4384227 (S.D. Ohio Oct. 26, 2010), for the proposition that the burden of proving privilege is not "onerous and can be satisfied by a statement that the communication contained legal matters." *Medex's Memorandum in Opposition*, at 2-3.  *Voorhies*, however, was quoting *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010), which was specifically addressing the sufficiency of statements made in a privilege log.  *Voorhies* is inapplicable to the dispute presently before the Court because Medex has not provided IPI or the Court with a privilege log regarding the May 30 production.

In support of its claim to the protections of the attorney client privilege, Medex has submitted the depositions of two Medex employees, Barbara Law and Vinc Ellerbrock.  *See Medex's Memorandum in Opposition*, Exhibits B, C.  Barbara Law testified in her deposition that she communicated with Felicia Jones to obtain legal advice, and Vinc Ellerbrock testified that he communicated with Adam Jones for the purpose of obtaining legal advice.  *See id.*, Exhibit B at 188, Exhibit C at 178.  These two depositions are insufficient to support a claim to the privilege.  The depositions of Barbara Law and Vinc Elelrbrock do not refer to any specific communications with Adam Jones, Yvonne Nichols, or Felicia Jones, and the depositions do not even mention communications with Yvonne Nichols.  Additionally, many of the 347 pages at issue from the May 30 production do not involve Barbara Law or Vinc Ellerbrock.  The mere fact that Adam Jones, Yvonne Nichols, or Felicia Jones was the sender or recipient of the documents at issue does not render them privileged.  See *United States v. Bartone*, 400 F.2d 459, 461 (6th Cir. 1968) ("The mere fact that a person is an

4

attorney does not render privileged everything he does for and with a client."). Accordingly, the Court concludes that Medex has failed to carry its burden of establishing that the attorney client privilege may be properly applied to the documents submitted under seal.

Nevertheless, the Court's review of the documents submitted under seal suggests that many of the documents fall within the ambit of the attorney client privilege. The Court will therefore analyze whether the privilege has been waived by the production of those documents by Medex.

**B.    Waiver**

Medex asserts that the 347 pages at issue from the May 30 production were inadvertently produced; IPI asserts that Medex has waived its right to assert a claim of privilege. Rule 502(b) of the Federal Rules of Evidence provides that a disclosure of a communication protected by the attorney client privilege does not operate as a waiver if:

> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).

"When a producing party claims inadvertent disclosure, it has the burden of proving that the disclosure was truly inadvertent." *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 671 (E.D. Mich. 1995) (citing *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 207 (N.D. Ind. 1990)). In determining whether an inadvertent disclosure entitles the producing party to the return of the document, courts generally consider the following five factors: "(1) the

5

reasonableness of precautions taken in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the magnitude of the disclosure, (4) any measures taken to mitigate the damage of the disclosures, and (5) the overriding interests of justice." *Evenflo Co. v. Hantec Agents Ltd.*, No. 3-:05-CV-346, 2006 WL 2945440, *6 (S.D. Ohio Oct. 13, 2006) (citing *Fox,* 172 F.R.D. at 671); *accord E.E.O.C. v. Honda of Am. Mfg,. Inc.*, No. 2:06-CV-0233, 2008 WL 440437, *4 (S.D. Ohio Feb. 13, 2008) (citing *Nilavar v. Mercy Health Sys.- W. Ohio*, 2004 WL 5345311, *3-4 (S.D. Ohio March 22, 2004)). This multi-factor test "is not mandatory and merely serves to guide a court's analysis when appropriate under the particular circumstances of each case." *N. Am. Rescue Prods., Inc., v. Bound Tree Med., LLC*, No. 2:08-cv-101, 2010 WL 1873291, *6 (S.D. Ohio May 10, 2010) (citing Fed. R. Evid. 502 advisory committee's note).

       **1.**    **The reasonableness of precautions taken in view of the extent of document production**

In support of its motion, IPI provides a signed declaration by Richard H. Lehman, counsel for IPI, stating that the May 30 production was substantially different than all of Medex's other productions. Lehman specifically asserts that the May 30 production was made in hard-copy format, whereas all other productions were electronic and that, although "virtually every page" in prior productions was stamped "confidential," no page in the May 30 production reflected that stamp. *Plaintiff's Motion*, Exhibit 1 at ¶¶ 1, 2, 4. Lehman also asserts that Richard Pearl, Medex's counsel, "stated that the May 30 production had not been reviewed by anyone in his law firm prior to production, but that an outside service had been used to cull responsive documents electronically" for all of Medex's productions. *Id.*, Exhibit 1 at ¶ 7.

In contrast, Medex asserts that the May 30 production "was reviewed by several layers of attorneys who isolated the privileged documents and prepared for electronic production in the same way as each of Medex[]'s twelve other productions, prepared and sent its documents in its customary way." *Medex's Memorandum in Opposition*, at 7. Medex does not specify, however, who reviewed the production, what steps were taken to review the documents for privilege or whether the production was different in form from prior productions. In fact, an August 3, 2011 email from Richard Pearl suggests that the production was not in electronic format. *See Plaintiff's Motion*, Exhibit 2 ("And while we are doing our part to locate any such documents, we cannot say that we will find everything, because searches are done electronically. You actually have these documents in your hands."). It is also unclear why Medex did not produce a privilege log as required by Rule 26(b)(5)(A) if, as asserted, "several layers of attorneys . . . isolated the privileged documents." Medex has also failed to adequately address the alleged inconsistencies between the May 30 production and all prior productions. Under these circumstances, the Court concludes that Medex has failed to establish that it took reasonable precautions to prevent an inadvertent disclosure.

## 2. The number of inadvertent disclosures

Medex claims that it inadvertently included 347 pages of privileged documents in the May 30 production, which consisted of approximately 7500 pages. Thus, 4.6 percent of the production, or 1 in approximately every 22 pages produced, was inadvertently disclosed. Given the relatively small number of documents in the production and Medex's assertion that "several layers of attorneys" worked on the May

30 production, the number of inadvertent disclosures is relatively
high.  *See Evenflo*, 2006 WL 2945440 at *6 (inadvertent disclosure of
134 pages in a 10,085 page production waived privilege) (citing *Dyson
v. Amway Corp.*, No. G88-CV-60, 1990 WL 290683 (W.D. Mich. Nov. 15,
1990) (inadvertent disclosure of 93 documents out of a total of 15,000
documents waived privilege)).

### 3.    The magnitude of the disclosure

The third factor looks to the extent of the disclosure and how
integrated the disputed documents have become in the litigation.
*Nilavar*, 2004 WL 5345311 at *5.  The documents disclosed in the May 30
production were essentially complete documents consisting of legal
memoranda, emails and email attachments.  The number of privileged
documents that were disclosed was significant, those documents were
not marked as confidential and no privilege log was provided with the
disclosed documents.  More importantly, the documents appear to be
relevant to IPI's claims and IPI has attempted to use them in
depositions.  These considerations all suggest that the magnitude of
the disclosure was high.

### 4.    Measures taken to mitigate the damage of the
###       disclosures

This factor "looks to the promptness of measures taken to rectify
the disclosure."  *Id.* at *6.  Upon learning of the disclosures, Medex
immediately invoked the privilege and asserted that the documents had
been inadvertently produced.  *See Medex's Memorandum in Opposition*, at
1-2; *Plaintiff's Motion*, Exhibit 1 at ¶ 6-8.  When IPI sought to show
fourteen of the documents to Barbara Law in a deposition, Medex again
immediately asserted that the documents were inadvertently produced,
privileged communications and it sought to claw back those documents.
*Medex's Memorandum in Opposition*, at 4-5; *Plaintiff's Motion*, Exhibit

1 at ¶ 10.  In both instances, Medex took immediate measures to prevent significant reliance by IPI on the documents.  Medex did not, however, follow the procedure in Federal Rule of Civil Procedure 26(b)(5)(B), which provides as follows:

> If information produced in discovery is subject to a claim of privilege . . . the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party . . . may promptly present the information to the court under seal for a determination of the claim.  The producing party must preserve the information until the claim is resolved.

The 2006 advisory committee notes to Rule 26 of the Federal Rules of further provide that

> [a] party asserting a claim of privilege or protection after production must give notice to the receiving party.  That notice should be in writing unless the circumstances preclude it. . . .  The notice should be as specific as possible in identifying the information and stating the basis for the claim. . . . [T]he notice should be sufficiently detailed so as to enable the receiving party and the court to understand the basis for the claim and to determine whether waiver has occurred.

Fed. R. Civ. P. 26 advisory committee's notes.

Medex provided IPI with notice that it intended to assert a claim of privilege as to the 347 documents.  *See Plaintiff's Motion*, Exhibit 2.  That notice, however, stated only that documents in IPI's possession might contain inadvertently produced, privileged communications.  *See id.*  Medex did not identify any particular documents covered by the privilege, did not provide a proper privilege log and, beyond conclusory statements, Medex did not state a basis for the claimed privilege.  *See id.*, Exhibits 1, 2.  Consideration of Medex's inaction and failure to comply with Rule 26 leads to the conclusion that Medex failed to take adequate measures to rectify or mitigate the damage of the disclosures.

    **5.    The overriding interests of justice**

The interests of justice weigh in favor of IPI.  Despite a relatively small production of documents and the relatively large number of claimed inadvertent disclosures, Medex has not specified a single particular document that it now claims is privileged, it has not produced the privilege log required by Rule 26(b)(5)(A) and it has not complied with Rule 26(b)(5)(B).  The extent of the disclosure, the relevance of the information disclosed and IPI's attempt to depose Barbara Law, Adam Jones, and Felicia Jones regarding the disclosures all indicate that IPI has relied on the disclosures.  These factors, combined with Medex's relatively weak response in its attempts to rectify the claimed inadvertent disclosure, suggest that the interests of justice militate in favor of IPI.

After balancing the required factors, the Court concludes that Medex waived the attorney client privilege otherwise applicable to the 347 documents in the May 30 production.  To summarize, the Court finds that Medex did not take reasonable precautions to protect its privileged information, the number of documents disclosed is significant, no privilege log was provided at the time of disclosure, the contents of some of the documents may be relevant to the heart of the dispute, and Medex made insufficient attempts to mitigate its damage even after it learned of the disclosure.

Accordingly, *Plaintiff's Motion for Determination that Documents Produced by Medex Are Not Subject to Privilege*, Doc. No. 163, is **GRANTED**.


August 28, 2012                    *s/ Norah McCann King*
                                   Norah M<sup>c</sup>Cann King
                                   United States Magistrate Judge