IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**INHALATION PLASTICS, INC.,**

      **Plaintiff,**

vs.                                                            Civil Action 2:07-CV-116
                                                              Judge Smith
                                                               Magistrate Judge King

**MEDEX CARDIO-PULMONARY, INC.,**
*et al.*,

      **Defendants.**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on plaintiff Inhalation Plastics, Inc. ("Inhalation Plastics") and counter defendant Walter Levine's (collectively "IPI") motion to reopen discovery and for leave to file a motion for reconsideration of the Court's summary judgment ruling. *IPI's Motion*, Doc. No. 254. Defendants Medex Cardio-Pulmonary, Inc. ("Medex CP") and Smith Medical ASD ("Smiths") oppose *IPI's Motion*, Doc. No. 257, and IPI has filed a reply, Doc. No. 259. This matter is now ripe for consideration. For the reasons that follow, *IPI's Motion* is **DENIED**.

**I.    Background**

The Court has previously set forth the background of this case:

> [Inhalation Plastics] manufactured and distributed medical products used in the treatment of patients having respiratory and anesthesia needs. At all relevant times, Walter Levine owned and was the President of [Inhalation Plastics], and David Levine was the Vice President of Sales and Marketing and Corporate Secretary of [Inhalation Plastics]. Medex CP, also a manufacturer and distributor of medical products, is an Ohio corporation with its principal place of business in the State of California.

In May 2002, [Inhalation Plastics] entered into a series of agreements with Medex CP, including an Asset Purchase Agreement ("the APA" or "the Agreement") (Doc. 112-1), and a Machinery and Equipment Production Lease ("the Production Lease") (Doc. 112-2), for the purpose of arranging Medex CP's acquisition of [Inhalation Plastics] and its business operations.  Under these agreements, Medex CP acquired, through sale and lease, assets and other property of [Inhalation Plastics].

Pursuant to the APA, [Inhalation Plastics] sold to Medex CP all of [Inhalation Plastics'] "rights, title and interest in and to all of those assets, rights and properties, which are used in or are related to the Business or are necessary for the operation of the Business as presently conducted (the "Purchased Assets")."  (Doc. 112-1).  The Purchased Assets included inventory, real property, and intellectual property.  Additionally, all "tangible personal property, including, but not limited to machinery, equipment, fixtures, furniture, tools, [and] supplies . . . shall be leased" to Medex CP in accordance with the Production Lease.  Pursuant to the Production Lease, [Inhalation Plastics] agreed to lease to Medex CP machinery, equipment, and other assets necessary and utilized for the manufacture and production of [Inhalation Plastics'] product lines.  Medex CP did not purchase the machinery and equipment "given the unprofitable results of [Inhalation Plastics'] business operations in recent years, including the current year." (Doc. 112-2).  Under the Production Lease, Medex CP agreed to pay a flat monthly payment to [Inhalation Plastics], and "Additional Rent," which has been referred to as an "earnout," based on Medex CP's earnings from the sale of [Inhalation Plastics] products.

. . .

In March 2005, MedVest Holdings Corporation ("MedVest Holdings"), a holding company that owned Medex, Inc., which in turn owned Medex CP (the separate corporate entity that acquired the [Inhalation Plastics] business in 2002), merged with a subsidiary of Smiths Medical Holdco Limited ("Smiths Holdco"), Forest Acquisition Corp.  As a result of this merger, Medex CP remained a wholly owned subsidiary of Medex, Inc., which became a subsidiary of Smiths Holdco.

On January 3, 2012, [Inhalation Plastics] filed its Third Amended Complaint[, Doc. No. 185]. [Inhalation Plastics'] Third Amended Complaint . . . [alleges, *inter alia*, that Medex CP] breached the APA and the Production Lease by, *inter alia*, assigning rights under these agreements without

2

>  the prior written consent of [Inhalation Plastics] (Count II). . . .

*Opinion and Order*, Doc. No. 251, pp. 2-5.

Discovery closed in this case on February 29, 2012. *See Continued Preliminary Pretrial Order*, Doc. No. 21; *Order*, Doc. No. 183. The parties filed motions for summary judgment in March and April 2012. *See* Doc. Nos. 208, 217, 218. On March 13, 2013, the Court ruled on the motions for summary judgment and, *inter alia*, granted Medex CP summary judgment as to Count II of the *Third Amended Complaint*. *Opinion and Order*, Doc. No. 251, pp. 27-33. The Court also concluded that Medex CP had waived the attorney client privilege that may have otherwise applied to 347 documents that Medex CP had produced on May 30, 2011. *Id*. at pp. 5-14.

IPI now seeks additional discovery related to Count II of the *Third Amended Complaint*. IPI argues that discovery should be reopened because there has been a subject-matter waiver of the attorney-client privilege with respect to the assignment dispute and that, "[i]n fairness, it is only appropriate that IPI be given the opportunity to conduct limited discovery concerning the information just recently determined to have been waived." *IPI's Motion*, pp. 1, 7. IPI contends that the 347 documents and the proposed discovery will demonstrate that there are genuine issues of material fact concerning

>  (1) when and whether MedexCP was truly 'merged' into the other Smith entities as the Court believed; (2) why it was not 'merged' with the totality of the other subsidiaries at the same time they were merged into the Smith entities; and (3) which employees/company actually used the leased equipment during the period of time before MedexCP was legally merged into a Smith entity — if it ever was.

*IPI's Motion*, p. 6. IPI contends that

3

> [i]f MedexCP was not merged and remained a stand-alone entity, and if, as it appears, it was not the entity or personnel operating or using the equipment subject to the lease, then genuine issues exist as to whether there was a 'use' or a *de facto* assignment of the lease in violation of the lease agreement. If that is the case, then the Court was incorrect in basing its analysis upon the existence of a non-existent merger.

*IPI's Motion*, p. 6.

**II. Standard**

Rule 16(b) of the Federal Rules of Civil Procedure requires that the Court, in each civil action not exempt from the operation of the rule, enter a scheduling order that limits the time by which , *inter alia*, discovery must be completed and dispositive motions may be filed. Fed. R. Civ. P. 16(b)(1), (b)(3)(A). The rule further provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). *See also* S.D. Ohio Civ. R. 16.2 ("[T]he Magistrate Judge is empowered to . . . modify scheduling orders upon a showing of good cause."). "'The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.'" *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). "A district court should also consider possible prejudice to the party opposing the modification." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (citing *Inge*, 281 F.3d at 625). The focus is, however, "primarily upon the diligence of the movant; the absence of prejudice to the opposing party is not equivalent to a showing of good cause." *Ortiz v. Karnes*, 2:06-cv-562,

4

2010 WL 2991501, at *1 (S.D. Ohio July 26, 2010) (citing *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995)). Whether to grant leave under Rule 16(b) falls within the district court's discretion. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).

**III. Discussion**

In ruling on the motions for summary judgment, the Court found that,

> in 2005, MedVest Holdings, the holding company that owned Medex, Inc., which in turn owned Medex CP (the separate corporate entity that acquired the [Inhalation Plastics] business in 2002), merged with a subsidiary of Smiths Holdco. As a result of this merger, Medex CP remained a wholly owned subsidiary of Medex, Inc., which became a subsidiary of Smiths Holdco. Medex CP remained a separate, active corporate entity after the merger. Thus, while Medex CP did not merge with any other corporate entity, the corporate ownership structure changed after the MedVest Holdings/Smiths Holdco merger.

*Opinion and Order*, Doc. No. 251, p. 30. The Court further found that Inhalation Plastics "present[ed] no evidence of an assignment from Medex CP to another entity," that IPI's arguments were "speculate[ve]," and that there was "no genuine issue as to whether Medex CP breached the APA or the Production Lease by impermissibly assigning rights or interests." *Id.* at pp. 32-33. The Court accordingly granted Medex CP summary judgment on Count II of the *Third Amended Complaint*. *Id*.

IPI now argues that some of the 347 documents that the Court determined were not subject to privilege "seriously call into question the factual underpinnings for the summary judgment decision." *IPI's Motion*, p. 3. Specifically, IPI challenges the Court's determination that Medex CP was merged into Smiths, that "there was no contractual

5

prohibition against merger," and the fact "that a 'Smith entity' was manufacturing former IPI product should come as no surprise because those entities were all 'merged.'" *See IPI's Motion*, p. 3. According to IPI, review of the 347 documents suggests "(1) an intentional decision *not* to merge MedexCP into Smiths; and (2) [that] some entity other that [sic] MedexCP — the party to the equipment lease agreement — was using the leased equipment." *Id*. Under those circumstances, IPI contends, "there was a *de facto* contractually-prohibited assignment of the equipment lease" and IPI is "entitle[d] to further limited discovery." *Id*.

IPI misinterprets the Court's March 13, 2013 *Opinion and Order*. IPI argues that the 347 documents suggest, and additional discovery is necessary to demonstrate, that Medex CP was not merged into Smiths and that an entity other than Medex CP used the leased equipment during the period of time before Medex CP was legally merged into a Smith entity. *See id*. at pp. 4-7. However, the Court's March 13, 2013 *Opinion and Order* specifically determined that MedVest Holdings, not Medex CP, "merged with a subsidiary of Smiths Holdco;" Medex CP, the Court found, "remained a separate, active corporate entity after the merger" and "remained a wholly owned subsidiary of Medex, Inc." *Opinion and Order*, Doc. No. 251, p. 30.

The Court's March 13, 2013 *Opinion and Order* expressly found that Medex CP was not merged into Smiths. It is therefore unnecessary to reopen discovery for the purpose of determining whether or when a merger occurred and if an entity other than Medex CP used the leased equipment during the period of time before Medex CP was legally merged

6

into a Smith entity.  This conclusion would not change even if the Court found a waiver of the attorney client privilege relevant to the assignment dispute because, as discussed *supra*, the discovery sought by IPI would not impact the Court's March 13, 2013 *Opinion and Order*.

    IPI has accordingly failed to establish good cause for modifying the scheduling order and to permit additional discovery.  A motion to reconsider the Court's summary judgment ruling on the basis of the anticipated additional discovery is likewise without merit.

    Accordingly, based on the foregoing, *IPI's Motion*, Doc. No. 254, is **DENIED**.


May 6, 2013                                            *s/Norah McCann King*
                                                                  Norah M$^c$Cann King
                                                   United States Magistrate Judge