Inhalation Plastics, Inc.,

    Plaintiff,

    v.

Medex Cardio-Pulmonary, Inc., *et al.*,        Case No. 2:07–cv–116

    Defendants.


Medex Cardio-Pulmonary, Inc.,

    Counter-Claimant,

    v.

Inhalation Plastics, Inc., *et al.*,        Judge Michael H. Watson

    Counter-Defendants.


## OPINION AND ORDER

Inhalation Plastics Inc. ("IPI") sues Medex Cardio-Pulmonary, Inc. ("Medex CP") and Smith Medical ASD's ("Smiths Medical" collectively, "Defendants"), and Defendants assert counterclaims against Plaintiff, Walter Levine ("Walter"), and David Levine ("David"), under state law for injuries arising out of an Asset Purchase Agreement ("APA") and a Machinery and Equipment Production Lease ("Production Lease") entered into between IPI and Medex CP. The Court has diversity jurisdiction over the case.

Pending before the Court are three motions in limine, ECF Nos. 277, 278, 280, a motion for leave to file an exhibit under seal, ECF No. 279, a motion for leave to file multiple pretrial motions and exceed page limitations, ECF No. 284, a motion for interlocutory appeal, ECF No. 305, and two motions for leave to file motions for summary judgment, ECF Nos. 306, 308. For the following reasons, the Court grants in part and denies in part Medex Cardio-Pulmonary, Inc.'s ("Medex CP") and Smith Medical ASD's ("Smiths Medical" collectively, "Defendants") motion for interlocutory appeal, ECF No. 305, denies Inhalation Plastics Inc.'s ("IPI" or "Plaintiff") and David's motions for leave to file motions for summary judgment, ECF Nos. 306, 308, and terminates the other pending motions as moot.

## I. PROCEDURAL HISTORY

Plaintiff/Counter-Defendant IPI sued Defendants/Counter-Claimants Medex CP and Smiths Medical on February 15, 2007. Compl., ECF No. 2. IPI amended its complaint three times, and the Third Amended Complaint was filed on January 3, 2012. Third Am. Compl., ECF No. 185. In the Third Amended Complaint, IPI claims breach of oral contract against Medex CP ("Count I"); various theories of breach of written contract against Medex CP ("Count II"); and successor liability against Smiths Medical for the violations in Counts I and II ("Count III"). Id.

Medex CP and Smiths Medical answered the Third Amended Complaint and filed four counterclaims against IPI and Counter-Defendants Walter Levine

("Walter") and David.[1]  Answer, ECF Nos. 187, 188.  Count I alleges IPI breached the Asset Purchase Agreement ("APA") and the Production Lease, and Count IV alleges Walter and David are personally responsible for the breaches under the Guaranty they both signed.  Counts II and III claim fraudulent inducement and fraud against IPI.

Discovery for the case closed in February 2012.  Thereafter, Defendants filed a joint motion for summary judgment on the entirety of IPI's Count I and a portion of IPI's Count II.  Defs.' Mot. for Summ. J., ECF No. 208.  IPI and Counter-Defendant Walter later moved for affirmative partial summary judgment on Counts II and III of IPI's Third Amended Complaint and on all of Defendants' counterclaims.  IPI's and W. Levine's Mot. Summ. J., ECF No. 217.  Thereafter, Counter-Defendant David moved for summary judgment on Count IV of Defendants' counterclaims.  D. Levine's Mot. Summ. J., ECF No. 218.

On March 13, 2013, the Honorable George C. Smith ruled on the parties' motions for summary judgment.  The Court granted summary judgment to Medex CP on IPI's claim for breach of oral contract (Count I), finding the purported terms of the alleged oral contract were not sufficiently definite and certain to demonstrate a meeting of the minds.  Order 26, ECF No. 251.

Further, the Court granted Medex CP partial summary judgment on IPI's breach of written contract claim (Count II).  Specifically, it granted summary

_____

[1] The Court uses first names for ease of reference as both Counter-Defendants have the same last name.

judgment to Medex CP on the portion of Count II in which IPI argued that the 2005 merger between MedVest Holdings and Smiths Holdco breached two "anti-assignment" clauses found in the APA and the Production Lease. *Id.* at 32–33. The Court concluded that the anti-assignment clauses had no effect in the context of the merger. *Id.* at 30.

The Court also granted Smiths Medical summary judgment on IPI's claim for successor liability (Count III) as it related to the claims for breach of oral contract and breach of the anti-assignment provisions of the APA and Production Lease. *Id.* at 33.

The Court denied IPI summary judgment as to Counts I and IV of Defendants' counterclaims, finding that those claims were not barred by any contractual limitations provisions in either the APA or the Guaranty. *Id.* at 37. It granted IPI summary judgment as to Counts II and III of Defendants' Counterclaims, however, concluding those claims were barred by Ohio's four-year statute of limitations. *Id.* at 38.

Thus, pending after the Court's ruling on the various summary judgment motions were: a portion of Count II and the related successor liability portion of Count III of IPI's Third Amended Complaint as well as Counts I and IV of Defendants' counterclaims.

Following an unsuccessful mediation attempt, the case was reassigned to the undersigned, who scheduled a bench trial for April 1, 2014. Order, ECF No. 264. The day before the final pretrial conference, the parties filed a joint

proposed final pretrial order which noted that at least one party potentially disputed the jurisdiction of the Court. Joint Proposed Final Pretrial Order, ECF No. 296. The Court vacated the bench trial, the parties briefed the jurisdictional issue, and the Court thereafter issued an opinion and order confirming its jurisdiction over the case. Opinion and Order, ECF No. 302.

The parties then discussed the possibility of settlement and contacted the Court via telephone with a question. The undersigned subsequently issued a sealed conference memorandum establishing the Court's answer to the question. Conf. Mem., ECF No. 303. In response to the Court's conference memorandum, Defendants moved for interlocutory appeal under Federal Rule of Civil Procedure 54(b). Def.'s Mot. for Interlocutory Appeal, ECF No. 305. Defendants seek certification to appeal the Court's summary judgment ruling on Count I, the anti-assignment provision portion of Count II, and the related portions of Count III of IPI's Third Amended Complaint as well as Counts I, II, and III of Defendants' Counterclaims. IPI, Walter, and David oppose Defendants' motion for interlocutory appeal, and IPI and David move for leave to file a second motion for summary judgment, asserting judicial estoppel precludes Defendants' counterclaims. ECF Nos. 306, 307, 308.

## II. ANALYSIS

### A. Motion for Interlocutory Appeal

#### 1. Standard of Review

Courts of appeals have jurisdiction only over appeals of final decisions of

the district court. 28 U.S.C. § 1291. "A grant of partial summary judgment that

does not dispose of all parties and all claims is generally not immediately

appealable unless the district court issues a Fed. R. Civ. P. 54(b) certificate."

*Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009) (citations omitted).

Rule 54(b) states in relevant part:

> When an action presents more than one claim for relief—whether as a claim, counter-claim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).

Rule 54(b) certification for an interlocutory appeal requires the district court

to determine: (1) it is dealing with a "final judgment;" and (2) there are no just

reasons to delay appellate review. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446

U.S. 1, 7–8 (1980).

"Although Rule 54(b) relaxes the traditional finality requirement for

appellate review, it does not tolerate immediate appeal of every action taken by a

district court." *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th

Cir. 1994). Rather, the rule "attempts to strike a balance between the

undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir. 1986).

The Court must first determine whether there is a final judgment as to one or more, but fewer than all claims and parties. Under the *McIntyre* test, the test used in the Sixth Circuit, allegations which concern a single "aggregate of operative facts" constitute a single claim for purposes of appellate jurisdiction. *Gen. Acquisition, Inc.*, 23 F.3d at 1028. *See also GenCorp., Inc. v. Olin Corp.*, 390 F.3d 433, 442 (6th Cir. 2004) ("A 'claim' under Rule 54(b) 'denotes the aggregate of operative facts which give rise to a right enforceable in the courts,' even if the party has raised different theories of relief.") (quoting *Gen. Acquisition, Inc.*, 23 F.3d at 1028).

In determining whether there is just reason for delay, the "district court must take into account judicial administrative interests as well as the equities involved." *Curtisss-Wright Corp.*, 446 U.S. at 8. The Court considers: "(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense

and the like." *Gen. Acquisition, Inc.*, 23 F.3d at 1030 (internal quotation marks and citation omitted).

The Court turns first to a determination of whether there are multiple claims in this case and, if so, whether the Court has entered a final judgment as to one or more but fewer than all of the claims.

### 2. Multiple Claims

Under the *McIntyre* test, those causes of action that share a common factual background are considered one claim for purposes of Rule 54(b) certification. This is true even if different theories of liability may have been asserted to permit recovery. *McIntyre v. First Nat'l Bank of Cincinnati*, 585 F.2d 190, 192 (6th Cir. 1978).

IPI argues that under the *McIntyre* test, all of the causes of action in this case share a common factual background and are thus considered one claim for Rule 54(b) purposes. Specifically, IPI contends that because the oral contract (Count I) arose out of the breach of written contract (Count II), and because IPI pleaded the breach of oral contract claim in the alternative to the breach of written contract claim, there is only one aggregate of operative facts and only one claim for purposes of Rule 54(b).

The Court disagrees and finds IPI's claims are based on distinct facts. IPI's breach of written contract claims involve the written APA and Production Lease. IPI alleges Medex CP: (1) breached the anti-assignment clauses of those agreements by assigning its rights under the agreements to Smiths Medical, (2)

moved equipment without IPI's consent, lost IPI's equipment, and failed to keep IPI's equipment in good condition and repair, and (3) failed to provide IPI with certain financial records.

After MedVest Holdings (the holding company that owned Medex, Inc., which in turn owned Medex CP) merged with a subsidiary of Smiths Holdco in 2005, Walter informed Medex CP's President, Dominick Arena ("Arena"), of his belief that Medex CP had breached the anti-assignment clauses in the agreements and that IPI was considering filing suit. That discussion allegedly prompted Arena to offer Walter between $7 million and $10 million in exchange for IPI refraining from filing suit and Walter refraining from resigning his employment. These discussions between Arena and Walter, and Medex CP's failure to pay, constitute the basis for IPI's breach of oral contract claim.

Thus, while all of the claims share some common facts in that they all relate in some way to the APA and Production Lease, the operative facts for each claim are different. That is, the facts the Court considered in determining IPI's breach of oral contract claim (whether there was an offer, acceptance, and consideration) were constrained to the conversations between Walter and Arena. Those facts are distinct from any of the facts concerning the breach of written contract claims (whether Medex CP lost or damaged IPI's equipment, disclosed the required financial records, or assigned its rights and obligations under the agreements to Smiths Medical). Those distinctions outweigh the common facts. "Because each count involves distinct facts relating to separate injuries, each

count is a separate claim for purposes of Rule 54(b)." *Planned Parenthood Southwest Ohio Region v. DeWine*, 696 F.3d 490, 501 (6th Cir. 2012). The Court thus finds IPI's breach of oral contract claim (Count I) is a separate claim for purposes of Rule 54(b), and because it was finally decided by Judge Smith, it is certifiable for appellate review so long as there is no just reason for delay.

For the same reasons, the Court finds IPI's cause of action for breach of contract based on the anti-assignment clause (Count II) is a separate claim from the breach of oral contract claim. [2] Further, the anti-assignment claim is separate from the remaining portions of IPI's breach of written contract causes of action. The operative facts for the breach of contract claim based on the anti-assignment provisions are the anti-assignment provisions of the agreements and the 2005 merger between MedVest Holdings and Smiths Holdco. The operative facts for the remainder of Count II are facts concerning whether Medex CP moved or lost IPI's equipment and machinery and whether Medex CP provided certain financial information to IPI. The provisions in the APA and Production Lease that Medex CP allegedly breached are different for each claim, and the facts constituting the breach are different for each claim. Accordingly, although each of the breach of written contract claims relates generally to the APA and Production Lease, the

---

[2] IPI argues only that its breach of oral contract claim arises from the same aggregate of operative facts as its breach of the anti-assignment provision of the written contract claim, not that it is the same as any of the remaining claims. IPI argues the oral contract claim and breach of the anti-assignment provision claims were pleaded in the alternative and cover the same damages. To the extent IPI is correct that those two counts are considered one claim for Rule 54(b) purposes, the claims are still properly certified for interlocutory appeal because there is a final decision on *both* of those claims, and the Court is certifying both for appeal.

Court finds the aggregate of *operative* facts is distinct for each claim within Count II. IPI's breach of written contract claim based on the anti-assignment provision was finally decided by Judge Smith and is therefore certifiable under Rule 54(b) so long as there is no just reason for delay.

Finally, the Court considers whether Defendants' dismissed counterclaims arise from the same aggregate of operative facts as any unresolved claims.[3] Defendants bring four counterclaims. Count I alleges IPI breached both the APA and Production Lease for failing to provide the leased assets in proper operating condition and repair, failing to provide machinery and equipment which could properly manufacture the products the equipment was supposed to produce, and failing to provide inventory that could be used or sold in the ordinary course of business. Countercl. ¶¶ 80, 85, ECF No. 187. Count IV alleges the Levines are personally liable for the breach of contract in Count I. Counts II and III allege IPI committed fraud and fraudulent inducement when IPI "made material misrepresentations and omissions concerning the good operating condition and repair of the assets" purchased by Medex CP pursuant to the APA or leased pursuant to the Production Lease, concerning the usability and salability of the inventory, and concerning IPI's willingness to participate in the improvement and

---

[3] Defendants also move for certification of Count I of their counterclaims. Judge Smith denied IPI, Walter, and David summary judgment on Count I of Defendants' counterclaims, rejecting Counter-Defendants' arguments that the claim was barred by the limitations provisions in the agreements. Defendants argue only that the decision was a purely legal one but cite no authority for the proposition that a decision on a purely legal issue is certifiable for appeal under Rule 54(b) when the claim is not finally decided. That Count remains pending and was not finally decided by Judge Smith. As such, it is not certifiable for interlocutory appeal.

development of the business to become compliant with regulatory and industry standards. Countercl. ¶¶ 89–92, 101–104, ECF No. 187. Thus, the Counterclaims all center around the same set of operative facts—the representations IPI or the Levines made to Medex CP concerning the condition of the purchased or leased equipment and inventory and the actual condition of the purchased or leased equipment and inventory. Defendants acknowledge this, stating "*factual issues* underlying Medex CP's fraud claims . . . overlap extensively with factual issues in Medex CP's unresolved breach-of-contract claims." Mot. Interlocutory Appeal 9, ECF No. 305 (emphasis in original).

That the Counterclaims should be considered one claim for purposes of Rule 54(b) is apparent from the relief sought. The damages described for all four counterclaims include the costs expended to bring the assets to proper operating condition and repair or to buy new equipment.[4] Countercl. ¶¶ 86, 98, 110, 118, ECF No. 187. Defendants thus merely raise three separate legal theories of liability (breach of contract, fraud, and fraudulent inducement) in order to recover for a single injury. Accordingly, the Court finds Defendants' counterclaims are a single claim for purposes of Rule 54(b). Because Defendants' counterclaims for breach of contract remain against IPI and the Levines, it is improper to certify for interlocutory appeal Judge Smith's decision on Defendants' counterclaims for fraud and fraudulent inducement.

---

[4] Although Defendants assert the claims for fraud and fraudulent inducement carry extra-contractual damages, they do not elaborate or cite record evidence to support that statement.

In sum, the Court finds that Judge Smith's March 13, 2013 Opinion and Order finally disposed of the following claims in a multiple claim action: IPI's Count I (breach of oral contract), the related portion of Count III (Smiths' successor liability), the portion of IPI's Count II (breach of written contract) based on the anti-assignment provision, and the related portion of Count III (successor liability). The first certification requirement is therefore met for those claims. *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir. 2002) ("The district court need not *enter* the partial final judgment in its certification of an immediate appeal pursuant to Rule 54(b); it simply must *recognize* that such a partial final judgment has been entered.") (emphasis in original). The Court now turns to whether there is just reason for delay as it relates to those claims.

### 3. No Just Reason for Delay

The claims set forth above should be certified for immediate appeal because there is no just reason for delay.

Turning to the relationship between the adjudicated and unadjudicated claims, the Court finds the claims and counterclaims are all related in the broad sense that they stem from the 2002 APA and Production Lease. However, as discussed above, the facts of the adjudicated claims are distinct from the facts regarding the unadjudicated claims. For example, the Sixth Circuit's conclusions regarding the formation of an oral contract and whether the merger amounted to an assignment will not impact the unadjudicated claims regarding whether Medex CP breached the agreement by moving or losing IPI's equipment or failing to

provide financial information, or whether Smiths Medical is liable for such a breach. Nor will the decisions impact whether IPI committed fraud or fraudulent inducement in the representations it made regarding the condition of its equipment and machinery, whether IPI breached the APA and Production Lease by failing to provide assets in proper operating condition and repair, or whether the Levines are personally responsible for the breach. The relationship of the claims thus weighs in favor of certification.

Second, the need for appellate review will not be mooted by future developments in the district court. If the Court does not grant certification on IPI's dismissed claims, it will hold a bench trial on the remaining, derivative claims, which are worth approximately $50,000. Due to the high value of Count I and the dismissed portion of Count II seeking damages up to $10 million and the relatively low value of the remaining claims, IPI intends to appeal the grant of summary judgment regardless of the outcome of the trial on the remaining claims.[5] Mar. 5, 2014 Hrg. Tr. 12: 6–10, PAGEID # 9381, ECF No. 298 ("[T]he value to IPI's claim is the value of what was alleged to be the payout that was due and, unfortunately, has been dismissed and we are going to have to appeal that decision following this trial."). IPI is likely to appeal the grant of summary judgment on its anti-assignment breach of contract claim as well because it is the

---

[5] This is true even though a portion of Count II remains and Count I was plead "in the alternative" to Count II. The most valuable portion of Count II was dismissed on summary judgment, so IPI intends to appeal those dismissals even if it prevails on the remaining portions of Count II.

allegedly improper assignment that IPI argues caused a loss in payment of additional rent. Thus, regardless of the outcome of the trial on the remaining claims, IPI will likely appeal the summary judgment decision.

As to the third factor, the Court finds a low possibility that the Sixth Circuit would be obliged to consider the same issues a second time. At issue on interlocutory appeal would be whether an oral contract existed and whether the merger between MedVest Inc. and Smiths Holdco breached the anti-assignment provisions of the agreements. Those issues are not relevant to any future appeal. Moreover, as discussed below, the Court finds that resolution of these issues on appeal could help facilitate a global settlement of the case, and any possibility of the Sixth Circuit having to face the same issues on a subsequent appeal is therefore offset by this finding. *See Curtiss-Wright Corp.*, 446 U.S. at 8 n.2. This factor thus weighs in favor of finding no just reason for delay.

Next, the Court considers the presence or absence of a claim or counterclaim that could result in a set-off against the judgment sought to be made final. In this case, the judgment sought to be made final is a decision granting summary judgment for Defendants on two claims, and that judgment would not be "off-set" by the remaining claims or counterclaims. IPI argues the Court should not certify Counts I and II because there are remaining counterclaims in the case. Although there are counterclaims, the presence of counterclaims "does not render a Rule 54(b) certification inappropriate." *Curtiss-Wright Corp.*, 446 U.S. at 9. Because the significance of counterclaims "turns on

their interrelationship with the claims on which certification is sought," *id.*, and because the breach of oral contract claim and breach of written contract claim based on the anti-assignment provisions are not interrelated to whether IPI provided the assets and inventory as provided for under the agreements, the Court finds the presence of Defendants' counterclaims is not an obstacle to certification. This factor is neutral.

Finally, the Court considers miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

This case has been pending since 2007. While the Court wishes to conclude the case as quickly as possible, the delay caused by interlocutory appeal will not create an undue hardship on either party. Moreover, given the parties' prior willingness to conditionally dismiss the remaining claims in order to appeal the high value claims, the Court finds that a decision on interlocutory appeal would facilitate a possible global settlement of the case.

Further, to the extent a trial becomes necessary, judicial economy promotes holding one trial rather than two. Although the certified claims are separate from the remaining claims, many of the same witnesses would have to testify in both trials. An interlocutory appeal would thus permit the Court to hold one trial rather than potentially holding two trials with all of the same lawyers and many of the same witnesses. Finally, there is no reason to question the solvency

of IPI Medex CP or Smiths at this point in time, and none of the claims are frivolous.

Having considered the judicial administrative interests as well as the equities involved, the Court finds no just reason to delay an appeal from Judge Smith's grant of summary judgment on IPI's breach of oral contract claim (Count I), breach of written contract claim based on the anti-assignment provisions (Count II), and the related portions of Count III of IPI's Third Amended Complaint.

## B. Motions for Leave to File Motions for Summary Judgment

IPI and David move for leave to file motions for summary judgment.[6] ECF Nos. 306, 308. IPI argues Medex CP is judicially estopped from asserting its counterclaims because those counterclaims contradict statements made in "Medex's" filings with and representations to the Securities and Exchange Commission ("SEC"). IPI contends "Medex" "swore to the SEC that it was unaware of any breaches of contract or issues related to anyone with whom it held a contractual relationship" and avers those statements directly contradict the counterclaims, which allege IPI breached the agreements and defrauded Medex CP in connection with those agreements. Mot. 10, ECF No. 307. Thus, IPI argues the filings and representations to the SEC prevent Medex CP from making the contrary allegations contained in the counterclaims. *Id.*

---

[6] David's motion merely incorporates by reference IPI's motion. ECF No. 206. IPI's motion, in turn, incorporates by reference the arguments set forth in its response to Defendants' motion for certification. ECF No. 308.

Medex CP opposes IPI's and David's motions. It notes the deadline for dispositive motions expired more than two years ago and that IPI knew of the facts relevant to its argument at the time of the deadline. Thus, Medex CP argues there is no good reason to justify IPI's failure to raise the judicial estoppel argument in the summary judgment motion it filed on April 30, 2012.

The Court agrees. According to Federal Rule of Civil Procedure 56(b), "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Discovery ended in this case on February 29, 2012, more than two years before IPI and David moved for leave to file additional motions for summary judgment. Thus, any subsequent summary judgment motion would certainly be well more than thirty days after the close of discovery.

Federal Rule of Civil Procedure 16(b)(4) states that a scheduling order "may be modified only for good cause and with the judge's consent." "[A] court choosing to modify a schedule upon a showing of good cause may do so only 'if it cannot reasonably be met despite the diligence of the parties seeking the extension.'" *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). "Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment." *Id.* (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). Previously, the Court established a scheduling order which

eventually set a deadline of April 30, 2012 for summary judgment motions. Order, ECF No. 213. Both parties filed timely motions for summary judgment.

IPI did not raise the judicial estoppel argument in its motion, despite the fact that IPI deposed Dominick Arena, Michael Dobrovic, Ralph Dickman, and Charles Jamison about SEC filings before the summary judgment brief was filed. Arena Dep. 253:4–254:11, ECF No. 207-1; Dobrovic Dep. 162:9–13, ECF No. 207-3; Dickman Dep. 135:12–136:8, ECF No. 207-2; Jamison Dep. 154:5–20, 245:9–15, ECF No. 216-2. Thus, IPI was presumably aware of the SEC filings at the time the brief was submitted, and it could have explored the issue and briefed its argument by the summary judgment deadline.

Moreover, David's motion for summary judgment essentially argued judicial estoppel. Without using that phrase, David argued that Medex Inc.'s 2003 S-4 registration statement, filed with the SEC, stated that none of the other parties to any material contract was in material default. David's Mot. Summ. J. 3, ECF No. 218. David could have developed his perfunctory argument and cited to case law regarding judicial estoppel but chose not to. Notably, after David filed his motion, IPI never moved to supplement its pending motion for summary judgment to include a judicial estoppel argument nor moved to adopt David's argument by reference.

The Court addressed David's argument in its March 13, 2013 Opinion and Order, finding that it did not warrant summary judgment. It concluded the SEC documents at most constituted "potential evidence, but not conclusive evidence,

in support of [David's] position at trial." Opinion and Order 38, ECF No. 251. It specifically held that such evidence does not "demonstrate [as a matter of law] that Medex CP waived any right to sue for breach of contract against IPI or the Levines." *Id.* Neither IPI nor David moved for reconsideration on that issue. This is especially material given that IPI and Walter moved for reconsideration of a different portion of the Court's summary judgment ruling. Mot. 1, ECF No. 254 (requesting reconsideration on the issue of breach of contract based on the anti-assignment clauses).

Accordingly, the Court finds no good cause for modifying the scheduling order to allow IPI and David a second bite at the summary judgment apple. "Parties are generally expected to set forth all their arguments in support of summary judgment in a single dispositive motion; piecemeal litigation at the summary-judgment stage is disfavored." *Spengler v. Worthington Cylinders*, 514 F. Supp. 2d 1011, 1022 (S.D. Ohio 2007). IPI offers no reason for failing to pursue a judicial estoppel argument in its previously filed motion. Moreover, David offers no reason for failing to develop or seek reconsideration of his perfunctory argument. The Court rejected the argument, and the undersigned sees no need to revisit that conclusion at this time. IPI and David are, of course, free to press the argument if and when this case proceeds to trial, but the Court cannot find that the scheduling order could not reasonably be met despite the diligence of IPI and David. Further, it would be prejudicial to Defendants to permit IPI and David to file a subsequent summary judgment motion without

permitting Defendants another opportunity to do file a motion for summary judgment attacking Plaintiff's remaining claims. The Court accordingly finds no good cause to modify the scheduling order and denies IPI's and David's motions for leave to file a second summary judgment motion.

### III.    CONCLUSION

For the above reasons, the Court grants in part and denies in part Defendants' motion for interlocutory appeal, ECF No. 305, denies IPI's and David's motions for leave to file motions for summary judgment, ECF Nos. 306, 308, and terminates as moot ECF Nos. 277, 278, 279, 280, and 284. In the event this case proceeds to trial, the Court will set a deadline for omnibus motions in limine. Each party will be limited to one omnibus motion in limine that complies with the Court's standing order.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**