## MACHINERY AND EQUIPMENT PRODUCTION LEASE

This Machinery and Equipment Production Lease ("Lease") is made and entered into this 10th day of May, 2002 by and between INHALATION PLASTICS, INC. ("Lessor"), located at 3217 North Kilpatrick Avenue, Chicago, Illinois 60641 and MEDEX CARDIO-PULMONARY, INC. ("Lessee"), located at 6250 Shier Rings Road, Dublin, Ohio 43016, with reference to the following facts, which by their recitation hereinbelow are incorporated and made a part hereof.

WHEREAS, Lessor is engaged in the business of manufacturing, marketing, sale and distribution of disposable critical care devises and equipment utilized in the respiratory care, cardiopulmonary support and anesthesiology markets (the "Business");

WHEREAS, Lessee proposes to purchase the Business and certain assets of Lessor and intends to continue business operations at Lessor's present facilities pursuant to that certain Asset Purchase Agreement between Lessor and Lessee, (the "Purchase Agreement"); all capitalized term(s) used herein but not defined shall have the meaning given to such term(s) in the Purchase Agreement;

WHEREAS, certain machinery and equipment necessary and utilized for the manufacture and production of Lessor's product lines are located at Lessor's present facilities;

WHEREAS, the current level of Lessor's Business does not, in Lessee's view, justify the purchase of such machinery and equipment, given the unprofitable results of Lessor's business operations in recent years, including the current year;

WHEREAS, Lessee is unwilling to commit the additional resources, expertise and capital, both human and monetary, it believes will be needed to develop enhanced revenues and profitable operations of the Business after acquisition thereof without Lessor's agreement to lease the assets subject to this Lease upon terms and conditions acceptable to Lessee.

NOW, THEREFORE, in consideration of the terms, covenants and conditions herein set forth, the parties agree as follows:

1. **AGREEMENT.** Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the machinery, equipment and other assets (collectively the "Equipment") described in the attached Exhibit "A" hereby incorporated herein by reference, upon and governed by the further terms and conditions of this Lease.

2. **LOCATION, CONDITION AND CAPACITY OF LEASED ASSETS.** Lessor represents and warrants to Lessee that the assets identified on Exhibit "A" are (i) all of the assets (excluding raw materials and components) reasonably necessary for the conduct of Lessor's manufacturing operations as currently and/or heretofore conducted immediately preceding Lessee's acquisition of the Business; (ii) are physically located at Lessor's operating facilities, 3217 North Kilpatrick Avenue, Chicago, Illinois; (iii) are in good working condition and repair, normal wear, tear and depreciation excepted; and (iv) as configured, are currently capable of producing products comprising the totality of the product lines of the Business and meeting all specifications, regulations and



CONFIDENTIAL

MEDCP00152

16. SURRENDER; EXTENSION OF TERM. Unless Lessee purchases the Equipment pursuant to Section 8 hereof, Lessee shall, at its expense, deinstall, inspect, test and properly pack the Equipment at the expiration of the Lease Term, free of all liens and rights of others, by delivering it on board such common carrier as Lessor may specify with freight collect to any destination within the State of Illinois specified by Lessor except that, if the Merrimac Trust has retained title to the real property in which the Equipment is currently located, Lessor agrees that the Equipment may remain in such real property. If Lessee so requests, Lessee shall reimburse Lessor for all costs and expenses Lessor incurs in fulfilling such tasks. Lessee agrees that the Equipment, when returned to Lessor, shall be in the same condition as when delivered to Lessee, reasonable wear and tear excepted, without Lessor incurring any expense to repair, rehabilitate or certify such Equipment. If requested by Lessor, Lessee, at its expense, shall store the Equipment on its premises for a reasonable period, during which period the Equipment shall be subject to all of the terms and conditions hereof, except for the obligation to make Rent payments. In all instances where Lessee is returning Equipment to Lessor, Lessee shall give Lessor written notice thereof in accordance with the terms of the applicable Schedule. If Lessee fails to provide the aforementioned notice or return the Equipment to Lessor in the time and manner provided above, the term shall be extended on a month to month basis in which event the same Rent, calculation and limitation thereof for such extension shall apply as is set forth in Section 5 hereof, and all other provisions of this Agreement shall continue to apply, for the period of such extension.

17. EVENTS OF DEFAULT. Any of the following shall constitute an Event of Default under this Lease: (a) Lessee fails to pay any Rent or any other amount payable to Lessor hereunder within ten (10) days after its due date; or (b) either party breaches or fails to perform or observe any other representation, warranty, covenant, condition or agreement to be performed or observed by such party hereunder, and such party fails to cure any such breach within thirty (30) days after notice thereof; or (c) any representation or warranty made by Lessee or Lessor hereunder, proves to be incorrect in any material respect when made; or (d) Lessee makes an assignment for the benefit of creditors, whether voluntary or involuntary; or (e) a proceeding under any bankruptcy, reorganization, arrangement of debts, insolvency or receivership law is filed by or against Lessee or Lessee takes any action to authorize any of the foregoing matters; or (f) Lessee becomes insolvent or fails generally to pay its debts as they become due, the Equipment is levied against, seized or attached; or (g) Lessee voluntarily or involuntarily dissolves or is dissolved, or terminates or is terminated; or (h) any guarantor dies or revokes a guaranty provided to Lessor under this Lease; or (i) any guarantor under this Lease is the subject of an event listed in clauses (b) through (g) above.

18. REMEDIES. If an Event of Default occurs, Lessor may, in its sole discretion, exercise one or more of the following remedies: (a) terminate this Lease or any or all Schedules; or (b) take possession of, or render unusable, any Equipment wherever the Equipment may be located, without demand or notice, without any court order or other process of law and without liability to Lessee for any damages occasioned by such action, and no such action shall constitute a termination of any Schedule; or (c) require Lessee to deliver the Equipment at a location designated by Lessor; or (d) proceed by court action to enforce performance by Lessee of any Schedule and/or to recover all damages and expenses incurred by Lessor by reason of any Event of Default; or (e) terminate any other

6

MEDCP00157

CONFIDENTIAL

agreement that Lessor may have with Lessee; or (f) exercise any other right or remedy available to Lessor at law or in equity. Also, the non-prevailing party shall pay the prevailing party all costs and expenses (including legal fees and costs and fees of collection agencies) incurred by the prevailing party in enforcing any of the terms, conditions or provisions of this Lease. Upon repossession or surrender of any Equipment, Lessor shall lease, sell or otherwise dispose of the Equipment in a commercially reasonable manner, with or without notice and a public or private sale, and apply the net proceeds thereof (after deducting all expenses, including legal fees and costs) incurred in connection therewith, to the amounts owed to Lessor hereunder; provided, however, that Lessee shall not be liable to Lessor for any deficiency or claim of loss by Lessor that remains after any sale or lease of such Equipment. Lessee agrees that with respect to any notice of a sale required by law to be given, ten (10) days' notice shall constitute reasonable notice. These remedies are cumulative of every other right of remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise, and may be enforced concurrently therewith or from time to time.

19. **LESSOR'S PERFORMANCE OF LESSEE'S OBLIGATIONS.** If Lessee fails to perform any of its obligations hereunder, Lessor may perform any act or make any payment that Lessor deems reasonably necessary for the maintenance and preservation of the Equipment and Lessor's interests therein; provided, however, that the performance of any act or payment by Lessor shall not be deemed a waiver of, or release Lessee from, the obligation at issue. All sums so paid by Lessor, together with expenses (including legal fees and costs) incurred by Lessor in connection therewith, shall be paid to Lessor by Lessee within ten (10) days after demand.

20. **ASSIGNMENT BY LESSOR.** Lessor shall have no right to assign, pledge, transfer, mortgage or otherwise convey any of its interests hereunder or in any Equipment, in whole or in part, without notice to, and consent of, Lessee. If any such Equipment is validly assigned, Lessee shall: (a) unless otherwise specified by the Lessor and the assignee ("Assignee") specified by Lessor, pay all amounts due to such Assignee, subject to any defense, setoff or counterclaim that Lessee may have against Lessor or Assignee; (b) not permit this Lease to be amended or the terms thereof waived without the prior written consent of the Assignee; and (c) execute such acknowledgments thereto as may be requested by Lessor. It is further agreed that: (x) each Assignee shall be entitled to all of Lessor's rights, powers, obligations and privileges under this Lease, to the extent assigned; (y) any Assignee may reassign its rights and interests under this Lease with the same force and effect as the assignment described herein; and (z) any payments received by the Assignee from Lessee with respect to the assigned portion of the Equipment shall, to the extent thereof, discharge the obligations of Lessee to Lessor with respect to this Lease. Lessor agrees that any assignment or transfer by Lessor or any assignee shall not materially change Lessee's obligations under this Lease.

21. **ASSIGNMENT OR SUBLEASE BY LESSEE.** Without Lessor's prior written consent, Lessee shall not assign this Agreement or any schedule or assign its rights in or sublet the equipment or any interest therein; provided, however, that Lessee may sublease or assign all or any part of the Equipment to an affiliate or a wholly-owned subsidiary of Lessee if: (a) Lessee and such sublessee or assignee execute and deliver to Lessor a writing (to be provided by Lessor) whereby the sublessee or assignee agrees to assume

7

CONFIDENTIAL

MEDCP00158

counterpart. Lessee understands and agrees that the terms and conditions this Lease as it relates to the Lessor shall be binding upon and shall inure to the benefit of Lessor, as well as any successors or assigns of Lessor.

27. **CHOICE OF LAW; INTEGRATION; ENTIRE AGREEMENT.** Each Agreement under this Lease shall be governed by the internal laws (as opposed to the conflicts of law provisions) of the state of Illinois. If any provision of this Lease shall be prohibited by or invalid under that law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Lease. Lessor and Lessee consent to the jurisdiction of any local, state or federal court located within the State of Illinois, and waive any objection relating to improper venue or forum non conveniens to the conduct of any proceeding in any such court. This Lease executed by both Lessor and Lessee constitutes the entire agreement between Lessor and Lessee relating to the leasing of the Equipment, and supersede all prior agreements relating thereto, whether written or oral, and may not be amended or modified except in a writing signed by the parties hereto.

IN WITNESS, WHEREOF, the parties have executed this Lease as of this date first above written.

LESSOR:

INHALATION PLASTICS, INC.

By: _____
WALTER LEVINE, PRESIDENT
Print Name and Title
MAY 10, 2002
Date

LESSEE:

MEDEX CARDIO-PULMONARY, INC.

By: _____
CHARLES J. JAMISON, V.P. Gen'l Counsel
Print Name and Title
May 10, 2002
Date

9

CONFIDENTIAL

MEDCP00160